The court will proceed to the next case of Omorheinhien v. Barr. Mr. Conte. Good morning, Your Honor. May it please the court, my name is Swariel Conte. I represent Mr. Benjamin Omorheiren, the petitioner in this case. Your Honor, just like your case in 2015, in Lara v. Lynch, the immigration judge and the Board of Immigration Appeals misapplied the burden of proof in this case. Mr. Omorheiren is a 70-year-old native and citizen of Nigeria who came to the United States in July 2008. He was twice married to a U.S. citizen, Ms. Linda Harris, and subsequently attained conditional permanent residence status in the United States. The marriage between Mr. Omorheiren and Ms. Harris deteriorated, and in July of 2011, they were divorced. As a result, Mr. Omorheiren filed a petition with the Immigration Service to remove the conditions on his residence so that he become a lawful permanent resident for 10 years. The Immigration Service denied the petition, claiming that Mr. Omorheiren failed to meet his burden of proof, largely because of documentary evidence. The Department of Homeland Security placed Mr. Omorheiren in deportation proceedings.  Mr. Omorheiren testified and also brought two live witnesses to provide a testimony in that case. Apart from that testimony, there were also documents submitted as part of his case, about approximately four affidavits from people who knew them, and documents relating to Ms. Linda Harris' tax returns for 2008 and 2009, and medical records relating to the birth of Ms. Harris' grandchild when they were residing with Mr. Omorheiren at the address. All of these documents were submitted to the court. At the conclusion of the hearing, the immigration judge consistently found that Mr. Omorheiren is an honest and credible person. In fact, the IJ was unequivocal for her vouching of Mr. Omorheiren's credibility. The IJ testified that Mr. Omorheiren testified in a detailed manner and provided detailed answers and explanations whenever possible. And I'd like to quote for the court, although it's in the brief, what the judge said regarding Mr. Omorheiren's credibility. He just said, I quote, I've listened to your testimony and I do find you to be a credible witness. I believe that you have testified in a detailed manner, in a manner indicating that you are telling the truth to the best of your knowledge and understanding. All of the questions being asked, you provided detailed answers and explanations whenever possible. You responded truthfully with regards to information you did not remember and you did know. And information that you did not know. So I believe that you are a credible witness today. Like I said, Mr. Omorheiren's testimony was also corroborated by two live witnesses. The IJ also gave credit to the testimony of the two witnesses. In spite of that, the judge found that Mr. Omorheiren did not meet his burden of proof. You know, the problem seems to have been that she was troubled, as she said, by the lack of even one piece of objective evidence demonstrating an intent to share a life. And then she, you know, gave a whole list of those things, which she believed were missing in this case. So, plus the inconsistencies that she found in the evidence. So, that led her to the conclusion that he had not carried his burden. Well, Your Honor, thank you for that question. Number one, I think the IJ cited the Real ID Act of 2005. But, again, that particular act indicates that the trial facts should look at the totality of circumstances. In this case, Your Honor, Mr. Omorheiren testified, and the judge found the testimony credible, that the whole period that they were living together, they were living in someone else's basement. They did not pay rent. They did not own a car. Mr. Omorheiren did not work. He did not have a social security number. So, he did not have any of the credentials that would enable him and his wife to get things together that the judge was citing to. So, if you look at, and the judge believed his testimony when he said this is what was going on in their life. In fact, Mr. Omorheiren did not open a bank account, and that's all in the record, until late in 2011 when he was able to get a social security number. Now, in terms of the document, there were two documents that the judge referred to and determined that there was inconsistencies. Number one, there was a lease agreement which immigration officers discovered back in 2010 when they were investigating their marriage. That, Mr. Omorheiren explained, that in fact, that lease was signed by Ms. Harris on behalf of her daughter. And the evidence record also shows that that same daughter resided with Mr. Omorheiren and his wife at their house at the Constellation Drive. That is where, in fact, she gave birth to one of the grandchildren. So, those were the factors that caused Mr. Omorheiren and Ms. Harris not to get the type of documents that the immigration judge was referring to. However, Your Honor, there were some documents. In fact, there was one statement that was submitted by, at least notarized statements, that was submitted by people who knew both of them. And there was a tax return document, at least W-2s, that had the same Constellation address for both Mr. Omorheiren and Ms. Harris. So, and the judge was able to listen to all that explanation and still determined that Mr. Omorheiren was credible. So, if he said, this is my wife, this was my wife and we lived together from 2008 until 2011, and then turned around and said, well, you didn't bring enough documents. I think in the case that I cited, this court decided, and I'd like to point particularly to a statement this court cited in that case. This court said that Hernandez testified unequivocally that he did not marry Winger to obtain residency, but because he loved her. If, as the board assumed, Hernandez testified truthfully, then this testimony alone is enough to prove that his marriage to Winger was more likely than not bona fide. So, and that is exactly what Mr. Omorheiren did. He testified truthfully that his marriage to Ms. Harris was for love and nothing else. And the judge found him to be credible. So, I believe this court should the same way hold that, in fact, that is sufficient under the burden of proof required for this type of cases. I know the, briefly on the issue of jurisdiction, the government did mention that this court does not have jurisdiction to review this case. I think that is wrong because the same argument that was made in Lara versus Lynch is the same argument we're making to this court. The IJ, as well as the Board of Immigration Appeal, misapplied the burden of proof. So, it is a question of law. It's a misapplication of the law. So, therefore, this court has jurisdiction to review this case. I know I reserved two minutes, but I think I explained my point. Thank you. Thank you, Mr. Conti. Ms. Chen? May it please the court. My name is Linda Cheng, appearing on behalf of the U.S. Attorney General. In this case, the court should dismiss the petition for review for lack of jurisdiction. Contrary to what petitioner argues, jurisdiction is the main issue, and it does differ from this case in Lara versus Lynch. Specifically, the agency here addressed Lara and found that the case was different in two very important ways. First of all, the government did not submit any contradicting evidence, and the agency did not make a corroboration finding. Both of those things were done in this case. Therefore, the immigration judge properly applied the preponderance of the evidence standard and concluded, then, that petitioner failed to meet his burden of proof. Furthermore... Forgive me, but it seems to me that we have jurisdiction. He's raising what I take to be a legal question, and that is whether the IJ and the BIA held him to a higher burden of proof than our decision in Lara spells out. To the extent that you rate petitioner's argument as a legal question, the agency here actually did apply the proper standard of review. The immigration judge cited to the preponderance of the evidence standard. The immigration judge then discussed the evidence that was presented by both sides, including contradicting evidence that was submitted by DHS here, and then found that petitioner still did not meet his burden of proof to establish by preponderance of the evidence that he entered into a bona fide marriage. And it was within her power to request or demand that he provide corroboration to substantiate his claim under 8 U.S.C. 1229 A.C. 4B. While even credible, the immigration judge still can require him to produce corroboration to meet his burden of proof. This is not contested. This has been acknowledged by this court in its prior case in Bodie v. Holder. Therefore, even if you would determine that a question of law has been presented by petitioner here, the agency actually applied the proper standard of review. There are problematic aspects of both the IJ's and the BIA's decision, though I am not saying at this point that I'm suggesting that we should grant review and remand. You know, the BIA enlarged on the IJ's decision because there were inconsistencies in her decision. Perhaps because the BIA recognized the inconsistency in her decision, the BIA gave a cramped reading to the IJ's credibility finding, insisting that the IJ went only so far as to say that Mr. Omer Heinhein had testified to the best of his knowledge and recollection, not that she believed him. So anyway, I think I made my point. Okay. Your Honor, do you have any other questions? Okay, then for the reasons stated today and in our brief, we believe the court should dismiss the petition for review. Thank you. Thank you, Ms. Chang. Second? Your Honor, I will remove the time. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.